Filed 8/12/14  P. v. Alaniz CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B252549 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA054322) |
| v. | |
| JOSE REFUGIO ALANIZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Walgren, Judge.  Affirmed and remanded with directions.

Linn Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Jose Refugio Alaniz was convicted, following a jury trial, of nine counts of committing lewd acts on a child under the age of 14 in violation of Penal Code[1] section 288, subdivision (a), and three counts of lewd acts on a child under 14 and more than 10 years younger than appellant in violation of section 288, subdivision (c)(1). The jury found true the allegations that the section 288, subdivision (a), offenses were committed against more than one victim within the meaning of section 667.61, subdivisions (b) and (e). The victims were Patricia K., Jasmine U. and Milly H. The trial court sentenced appellant to a total term of 139 years, 4 months to life in state prison. The court ordered appellant to pay a $10,000 restitution fine pursuant to section 1202.4, subdivision (b), twelve $40 court operations assessments pursuant to section 1465.8, subdivision (a)(1), twelve $30 criminal conviction assessments pursuant to Government Code section 70373 and a $300 sex offender fine pursuant to section 290.3, subdivision (a). The court also imposed but stayed a $10,000 parole revocation fine pursuant to section 1202.45. The court awarded appellant a total of 830 days of presentence custody credit.

Appellant appeals from the judgment of conviction, contending the trial court erred in excluding evidence of Patricia's prior complaints of sexual abuse and of a sexual relationship between Patricia and Milly. Appellant also contends there is insufficient evidence to support his convictions for lewd acts on Jasmine. Respondent contends there are several corrections which must be made to the record. We order two corrections to the record, as set forth in the disposition. We order the section 290.3 fine stricken, and the matter remanded for a determination of appellant's ability to pay this fine together with other omitted penalties and assessments as set forth in section 4 of this opinion. We affirm the judgment of conviction in all other respects.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

Facts

In October, 2011, fourteen-year-old Patricia lived with her mother Amber P. and appellant, who was her mother's boyfriend. Patricia was in therapy. During a therapy session, she told the therapist that appellant had sexually abused her.[2] The abuse was reported to the Los Angeles County Sheriff's Department. Patricia told the investigating officer that appellant had also molested two of her friends, Jasmine and Milly. Neither had reported the abuse. Patricia was examined by Bridgett Amis, a registered nurse and sexual assault examiner. She opined that the findings from the examination were consistent with the history she had received from Patricia.

At trial, Patricia testified that when she was about six years old, Amber and appellant began dating, then appellant moved into their home in Westchester. This was sometime around 2003 to 2004, as Patricia turned six in September 2003. The molestation began shortly after appellant moved in. Appellant came into Patricia's room while her mother was in the shower and told Patricia to put her mouth on his penis. When she refused, he left, but returned with whipped cream, which he put on his penis. Patricia put her mouth on appellant's penis. The incident lasted about one minute.

Appellant continued to molest Patricia every day. He told her to put her mouth on his penis and testicles and to stroke his penis. She complied. Appellant put his fingers inside her vagina "to stretch her." He also licked her vagina and her chest and grabbed her chest and buttocks. He also put his penis in her vagina and anus. It hurt. Her anus bled.

While living in Westchester, Patricia became friends with Jasmine. Jasmine was born in March 1995, and was about a year and a half older than Patricia. According to Jasmine, she and Patricia became friends when Jasmine was in fifth grade.

At some point, appellant, Patricia and Jasmine walked to the liquor store. Appellant asked Jasmine if she would like to have sex, and if she had ever had a

---

[2] Patricia also told her therapist that she had been abused by a neighbor when she was about seven years old and by Amber's former boyfriend Marcos. This evidence was not admitted at trial.

3

"threesome." Jasmine said she did not know what a threesome was. She also said she would not like to have sex. When they got back to the house, they all went in to the backyard. Appellant forcibly inserted his penis in Patricia's vagina. Appellant then told Patricia to leave. He touched Jasmine's breasts and vagina through her clothes. She told him to stop, and he did.

According to Patricia, not long after the backyard incident, appellant put his penis in Jasmine's vagina while the two girls were in the living room. He grabbed onto Patricia's body parts at the same time. According to Jasmine, the next incident occurred in Patricia's bedroom. Appellant touched both Patricia and Jasmine, and put his penis in Jasmine's vagina.

According to both girls, appellant also had sexual intercourse with the two of them on several occasions in the bathroom. Appellant would began by washing the family's two dogs with Jasmine and Patricia in the bathroom. He would lock the door and touch the girls on their breasts and vaginas. Sometimes, he had sexual intercourse with only Jasmine, other times with both girls. Jasmine also testified that appellant had intercourse with her on other occasions when Patricia's mom was not home.

According to both girls, appellant also had sexual intercourse with them at Jasmine's house on at least one occasion when all three went to Jasmine's house to pick up some movies. Appellant told the girls to touch each other. He had sexual intercourse with both of them.

At some point, most likely in 2009, Patricia, Amber and appellant moved from Westchester to Palmdale. Appellant continued to molest Patricia.[3] On two or three occasions, appellant inserted a glass object into Patricia's vagina. At trial, Amber testified that she recognized the glass object and had seen it in different locations around the house, including underneath Patricia's bed. On at least one occasion, appellant put cherry-flavored gel on his penis and told Patricia to put her mouth on it. Amber testified

---

[3] Appellant also continued to molest Jasmine when she came to visit Patricia in Palmdale, but these molestations likely occurred after Jasmine's 14th birthday and did not form the basis of any of the charges against appellant involving Jasmine.

4

that she and appellant had used a strawberry-flavored gel for sex. At some point, Amber noticed that there was not much gel left in the container, and was confused by the decrease because she and appellant had only used the gel a few times.

In Palmdale, Patricia became friends with Milly H. Milly was born in August 1997, and was close to Patricia's age. (Patricia was born in September 1997.)

In July 2011, when Milly was 13 years old, appellant molested her. The first incident occurred when appellant took Milly and Patricia to a nearby aqueduct to have a bonfire and make "s'mores." According to Patricia, appellant told Milly that he was going to have sex with her, but Patricia said that she would "take it" for Milly. Patricia also stated that appellant put Milly's hand in Patricia's pants. Both girls said that appellant took off their clothes and told them to lick each other's vaginas. Appellant had sexual intercourse with Patricia. According to Patricia, appellant put his mouth on Milly's vagina. Both girls said that appellant rubbed his penis on Milly's vagina.

On the walk back to the house, appellant threatened to kill Milly's family if she told anyone what had just happened. Sometime later that night, appellant went into Patricia's room, put his hand in Milly's pants, rubbed her vagina and walked away. Patricia and Amber were arguing in another room at the time.

Appellant testified in his own defense at trial, and denied having sex with Patricia or molesting her. In Westchester, he was not home alone with Patricia often. When Jasmine came over, appellant was seldom alone in the house with them. He was never alone with Jasmine or Patricia at Jasmine's house. He went to the aqueduct with Patricia and Milly alone three times. Appellant never used the glass object in a sexual manner with anyone. He had used strawberry-flavored gel with Amber two or three times. Appellant admitted he had been a gang member, but stated that he left the gang when he was about 18 years old.

In rebuttal, the People introduced evidence that as recently as 2009, appellant admitted to a police officer that he was a member of the Highland Drifters gang and had been one for 12 years.

5

Discussion

1. Exclusion of evidence

Appellant contends the trial court abused its discretion in excluding evidence of prior complaints of sexual abuse by Patricia involving other men. He further contends the trial court abused its discretion in excluding evidence of a sexual relationship between Patricia and Milly. We do not agree.


a. Prior complaints

At about the same time that Patricia told her therapist about appellant's sexual abuse, she also stated that an upstairs neighbor, Cesar, had molested her when she was seven years old. She also told the therapist that Amber's former boyfriend, Marcos, had sexually abused her. [4] Appellant characterizes these complaints as false and contends the trial court abused its discretion in excluding them pursuant to Evidence Code section 782. [5] Appellant further contends the court's ruling unconstitutionally restricted his Sixth Amendment right to cross-examination and impinged on his right to present a defense.

The trial court stated, "When you try to get into the prior alleged sexual conduct of the victim, you need to comply with Evidence Code section 782, which we've discussed previously. And if you are not trying to get into the prior sexual conduct of the victim and you're offering it for some other purpose, you haven't given me any reasons. . . . You previously said there are accusations. They were false and you've conceded you don't have any information they are false. So it was previously excluded under that

---

[4] Appellant also refers to an incident which occurred when Patricia was about 4 years old and told her babysitter that she was being sexually abused. The abuse claim was apparently investigated, but there were no records of the investigation and Patricia had no memory of the reported abuse. His trial counsel did initially seek to introduce evidence of this incident, but later counsel withdrew his request to present evidence about the incident. Accordingly, we do not consider this incident.

[5] This section provides procedures to be followed if "evidence of sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness" in certain specified circumstances. (Evid. Code § 782, subd. (a).)

6

theory. I can see if you have competent evidence she falsely accused someone of that behavior." The trial court correctly stated the law.

Evidence Code section 782 does apply to evidence of a witness's prior sexual conduct for impeachment purposes under some circumstances. However, evidence of a victim's prior *false* complaint of molestation is not evidence of "sexual conduct" as defined by section 782. (*People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1454-1455; *People v. Franklin* (1994) 25 Cal.App.4th 328, 335.)

Admissibility of false molestation claims, like other evidence, is subject to exclusion under Evidence Code section 352, which provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

A trial court has broad discretion to weigh the probative value of evidence against its potential prejudicial impact. A court's decision that the probative value of the evidence outweighs its prejudicial impact will not be disturbed on appeal unless the court exercised its discretion in "an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) To the extent that appellant contends the trial court abused its discretion in excluding the evidence on relevance grounds, we do not agree.

"Evidence of a prior false report of molestation or rape is relevant to the credibility of the victim. [Citations.]" (*People v. Miranda* (2011) 199 Cal.App.4th 1403, 1424; *People v. Franklin, supra*, 25 Cal.App.4th at p. 335.) Absent proof that the prior complaint was false, however, the evidence has marginal impeachment value. (*People v. Bittaker* (1989) 48 Cal.3d 1046, 1097, overruled on other grounds by *People v. Black* (2014) 58 Cal.4th 912; see *People v. Tidwell, supra*, 163 Cal.App.4th at p. 1457.)

Where there is no conclusive proof that a prior molestation complaint is false, the parties may in effect be forced to conduct a trial within a trial on the issue of the truthfulness of the prior complaint, and such an effort may consume considerable time

7

and divert the attention of the jury from the current case. (*People v. Bittaker, supra*, 48 Cal.3d at p. 1097; *People v. Tidwell, supra*, 163 Cal.App.4th at pp. 1457-1458.)

As the trial court pointed out, appellant's trial counsel acknowledged that he had no evidence that the complaints were false. Counsel represented that Marcos was arrested, but apparently never prosecuted. Counsel made no representations at all about Cesar. Given the lack of evidence of falsity, Patricia's prior complaints were of marginal relevance. The trial court did not abuse its discretion in excluding evidence of these two complaints.

On appeal, appellant argues that "under the current state of the criminal process, it is virtually impossible to prove a prior complaint is false unless the victim admits he or she lied to the police" and implies he should be excused from the requirement of proving falsity. We do not agree.

The difficulty of proving a prior complaint to be false will depend on the circumstances of the complaint. In some instances, the complaint may have resulted in a trial in which the accused was found not guilty, which is evidence tending to prove the charges were false. In other instances, no trial may have occurred, and the defense may be unable to locate the accused molester, making it very difficult to offer evidence of falsity. There is nothing in the record on appeal to show what, if any, efforts appellant's trial counsel or investigator made to find and speak with Marcos and Cesar, or any other third party witnesses such as the peace officer who investigated Marcos.

Appellant also contends that the mere fact that Patricia claimed to have been molested by four different men on four different occasions while she was between the ages of four and fourteen "raise[s] doubt in that it highly unlikely that a child would be molested four times in ten years and wait 10 years to say something about the molestations to anyone until she saw a therapist." To the extent that appellant is claiming that the complaints were so inherently incredible that they should have been considered false on their face and so admitted to impeach Patricia, we do not agree. There is nothing in the record to support appellant's theory that such a delay would be unusual behavior by victims of molestation. We do not find these circumstances to be inherently

8

incredible. Accordingly, the complaints should not have been admitted on the basis that they were false on their face.

Since the trial court acted within its discretion in excluding cross-examination on this subject, no violation of appellant's right to confrontation occurred. (See *People v. Miranda, supra,* 199 Cal.App.4th at p. 1426.) Further, since the evidence was of little, if any, probative value, there was no violation of appellant's due process right to present a defense. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 1014-1015.)

    b. Prior sexual conduct

During appellant's trial counsel's cross-examination of Milly, he asked her if she had had "any kind of physical relations with Patricia during" the two years they were friends. Milly replied, "We've kissed." The prosecutor objected on relevance grounds, and the court sustained the objections and struck the testimony. The court stated, "I don't find it in any way relevant. It is excluded under Evidence Code section 782 and 350 and 352. I don't think it has any relevance as to whether or not she was a victim of these crimes or to the case that we are dealing with."

Appellant contends the trial court erred in so ruling because compliance with Evidence Code section 782 was not required and the evidence was relevant to show Milly's bias and her familiarity with sexual acts. Appellant further contends the court's ruling violated his rights under the confrontation clause of the Sixth Amendment to the United States Constitution.

Appellant did not raise the confrontation clause claim in the trial court and so has forfeited it. (*People v. Thornton* (2007) 41 Cal.4th 391, 427.) Appellant did not contend in the trial court that the relationship was offered to show potential bias on Milly's part. He contended only that such a relationship would show Milly's familiarity with sexual acts, and would impeach her claims that she was "clear and innocent" up until appellant made her have sexual relations with Patricia. Accordingly, appellant has forfeited any claim that the evidence should have been admitted to show bias.

9

Even if the trial court erred in finding Evidence Code section 782 to be a ground for exclusion, the error would be harmless under any standard of review. The prosecutor objected to the evidence on relevance grounds. The court's ruling shows that its primary ground for exclusion was the lack of relevance. There is no reasonable probability or possibility that the trial court would have admitted the evidence if the court had believed the procedural requirements of Evidence Code section 782 did not apply.

The trial court acted within its discretion in finding the evidence to be irrelevant and excluding it on that ground. Appellant contended that the relationship would show Milly's familiarity with sexual acts, and would impeach her claims that she was "clear and innocent" up until appellant made her have sexual relations with Patricia. However, Milly did not testify that she was innocent up until her encounter with appellant at the aqueduct. Thus, any evidence that she was experienced would not have impeached her testimony. Appellant also contended that "a lot depends on her knowledge of what was going on during the relationship. She's talking about touching vaginas and penises and I think that may come about as to her touching Patricia's vagina when the defendant wasn't present and having some kind of relationship with Patricia." It is not clear what appellant meant by a lot depending on her knowledge of what was going on during the relationship. Patricia was female, and so any sexual encounter Milly might have had with Patricia could not have enlightened Milly about male body parts or the details of sexual intercourse with a man. Milly did not need a sexual encounter with Patricia to learn about female body parts, as Milly herself is a female, and of about the same age as Patricia. Thus, evidence of a sexual encounter with Patricia would not have cast doubt on Milly's description of appellant's molestation.

Even if the trial court had abused its discretion in excluding evidence of a possible sexual relationship between Patricia and Milly, the error would be harmless under any standard of review. Appellant contends that it would have shown bias, but the jury was aware that Patricia and Milly were best friends. Adolescent sexual experimentation would have added little to the bias inherent in being best friends.

10

Since the trial court acted within its discretion in excluding cross-examination on this subject, no violation of appellant's constitutional rights occurred. (See *People v. Miranda, supra,* 199 Cal.App.4th at p. 1426 [no violation of confrontation clause when trial court acted within its discretion in excluding evidence]; *People v. Jenkins, supra,* 22 Cal.4th at pp. 1014-1015 [no violation of right to present defense when excluded evidence was of marginal probative value].)

2. Sufficiency of the evidence

Appellant contends there is insufficient evidence to show that Jasmine was under the age of 14 when he molested her, and so insufficient evidence to support his counts 9 through 12 convictions for committing lewd acts on a child under the age of 14 years. He further contends such a conviction violates his constitutional rights to due process and trial by jury.

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citations.]'" (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

The prosecutor relied in part on Patricia's move from Westchester to Palmdale to show Jasmine's age. Almost all the evidence showed that Patricia and her family moved in 2009 or earlier. Jasmine turned 14 in March 2009. The prosecutor's theory, in part,

11

was that the move to Palmdale occurred in early 2009, before Jasmine turned 14, and so all the molestations in Westchester occurred before Jasmine turned 14.

There is substantial evidence to support the prosecutor's theory, and so the convictions. Amber testified that they moved in the middle of sixth grade, maybe after Christmas vacation. This creates an inference that the family moved during January or February (the fifth and sixth months of a ten month school year) and thus before March, 2009. Appellant testified that the family moved to Palmdale when Patricia was around 9 or 10, which indicates that the move occurred before September, 2008, when Patricia turned 11. Amber's and appellant's testimony is substantial evidence that the family moved before Jasmine's 14th birthday in March 2009.

Jasmine's statement to Detective Brunner is also substantial evidence that the molestations occurred before her 14th birthday. Jasmine testified that she told Detective Brunner a year or more before trial that the molestations occurred when she was in fifth grade, and that her memory was better when she spoke with the detective than it was at trial.[6]

On appeal, appellant focuses on inconsistencies in the witnesses' testimony. Patricia, Amber and appellant all had different memories of when the move occurred. Patricia's testimony as a whole showed that they moved in the last four months of sixth grade, which would encompass February through June 2009, and so could have been either before or after Jasmine's 14th birthday. Appellant testified that the move occurred when Patricia was around 9 or 10, but he also testified that the move occurred when she was 11 or 12. These latter ages could place the move after Jasmine's 14th birthday, since Patricia turned 12 in September 2009. Jasmine herself initially testified that she was "[l]ike 14" when the molestations occurred.

"Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury

---

[6]     Detective Brunner confirmed that Jasmine stated the molestations occurred when she was in fifth grade.

to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

The jury was clearly instructed that an element of the charges was that the victim was under the age of 14 when the lewd acts occurred.  A rational jury could have found that the prosecution proved this element of the crime beyond a reasonable doubt.  Thus, "the due process clause of the United States Constitution is satisfied [citation] as is the due process clause of article I, section 15 of the California Constitution." (*People v. Osband* (1996) 13 Cal.4th 622, 690.)

### 3.  Record corrections

Respondent contends that appellant was entitled to 724 days of actual custody credit, and the trial court miscalculated in awarding appellant only 722 days.  Appellant does not dispute this contention.  We agree with respondent.

Appellant was arrested on October 11, 2011 and was in custody until he was sentenced on October 3, 2013.  This totals 724 days.  This change in actual custody does not affect appellant's conduct credits, which were limited to 15 percent by Penal Code section 2933.1.  Fifteen percent of 724 is 108.6, which must be rounded down to 108 days.  (See *People v. Ramos* (1996) 50 Cal.App.4th 810, 815-816 [section 2933.1 provides that conduct credit "shall not exceed 15 percent"].)  That is the same amount appellant previously received.  The additional two days of actual custody credit increases appellant's total presentence custody to 832 days.  The abstract of judgment must be corrected to show the correct amount of credits and also to show that appellant's presentence custody credits were calculated pursuant to Penal Code section 2933.1.

Respondent also points out that the abstract of judgment does not show that appellant was sentenced pursuant to Penal Code section 667.61.  We agree with respondent that the abstract should be corrected to show this fact.

4. Restitution fine

The trial court imposed a fine of $300 on appellant pursuant to section 290.3, subdivision (a). Respondent contends the trial court erred in failing to impose $900 in mandatory penalties and surcharges on that fine. We agree.

The trial court was required to impose a $300 state penalty pursuant to section 1464, subdivision (a)(1); a $210 county penalty pursuant to Government Code section 7600, subdivision (a)(1); a $60 emergency medical services penalty pursuant to Government Code section 7600.5, subdivision (a)(1); a $60 state surcharge pursuant to section 1465.7, subdivision (a); a $150 state court construction penalty pursuant to Government Code section 70372, subdivision (a)(1); a $30 DNA penalty pursuant to Government Code section 76104.6, subdivision (a); and a $90 state-only DNA penalty pursuant to Government Code section 76104.7, subdivision (a).[7] (*People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1528-1529; *People v. McCoy* (2007) 156 Cal.App.4th 1246, 1254.)

As respondent recognizes, this court has held that when a fine has an "ability to pay" provision, and a correction on appeal would result in an increased fine, the matter must be remanded to the trial court for a determination of the defendant's ability to pay. (See *People v. Castellanos*, *supra*, 175 Cal.App.4th at pp. 1531-1532; see also *People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1249, 1250.) Section 290.3, subdivision (a), has an "ability to pay" provision. With the addition of the mandatory penalties and surcharges, appellant's fine would be $1,200. Accordingly, the matter must be remanded to the trial court for a determination of appellant's ability to pay the increased fine.

---

[7] Several of the penalties are subject to ex post facto principals. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1374 [penalties pursuant to section 1465.7 and Government Code sections 70372, 76000.5, 76104.6 and 76104.7].) Appellant was convicted on crimes that occurred between May 26, 2003 and October 11, 2011. All of the penalties were enacted prior to October 11, 2011 and apply to appellant.

14

Disposition

The abstract of judgment is ordered corrected to show that (1) appellant has 724 days of actual custody plus 108 days of custody credit for a total of 832 days of presentence custody credit; (2) appellant's custody credits were calculated pursuant to section 2933.1 and (3) appellant was sentenced pursuant to section 667.71.  The $300 section 290.3 fine is reversed.  The matter is remanded for a hearing to determine if appellant has the ability to pay the total fine detailed in this opinion, a lesser amount or nothing at all.  The judgment of conviction is affirmed in all other respects.  The clerk of the superior court is directed to prepare an amended abstract of judgment reflecting the three corrections set forth in this disposition, plus the fines determined by the court after the ability to pay hearing, and to deliver a copy of the amended abstract to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MINK, J.[*]

We concur:



MOSK, ACTING P.J.



KRIEGLER, J.

---

[*]     Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.